UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


UNITED STATES OF AMERICA,          Case No. 5:24-cr-00311-DAR
                                   Cleveland, Ohio
          Plaintiff,

     vs.                           Wednesday, September 17, 2025


CHRISTOPHER J. MACHAMER,

             Defendant.



TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS
BEFORE THE HONORABLE JENNIFER DOWDELL ARMSTRONG
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Government:        **Payum Doroodian,**
                           *Assistant United States Attorney*


For the Defendant:         **Donald J. Malarcik**, **Jr.**, *Esquire*




Official Court Reporter:   Stacey L. Kiprotich, RMR, CRR
                           United States District Court
                           1716 Spielbusch Avenue, Suite 120
                           Toledo, Ohio 43604
                           (419) 213-5520



Proceedings recorded by mechanical stenography from a
digital audio recording, transcript produced by
computer-aided transcription.

**Wednesday, September 17, 2025**

**- - -**

**(Proceedings commenced at 1:36 p.m.)**

**- - -**

THE COURT:  Good afternoon.

Please be seated.

COURTROOM DEPUTY:  Your Honor, the matter before the Court carries Case Number 5:24-cr-311, *United States of America versus Christopher J. Machamer*.

THE COURT:  Thank you.

Will counsel for the Government introduce himself for the record, please.

MR. DOROODIAN:  Good afternoon, Your Honor.

I am Payum Doroodian, and I'm here on behalf of the United States, and I'm covering for Mr. Pete Daly.

THE COURT:  Thank you, Mr. Doroodian.

And will counsel for the defense please introduce himself for the record.

MR. MALARCIK:  Yes, Your Honor.

Attorney Don Malarcik here on behalf of Christopher Machamer, who is present in the Court, seated to my left.

THE COURT:  Thank you, Mr. Malarcik.

And it is Machamer?  Am I pronouncing that correctly?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Good.  I don't want to

butcher it throughout the proceeding.

So we are here today for a change of plea hearing. Mr. Malarcik, I understand that Mr. Machamer wishes to plead guilty to Counts 1 through 5 of the Indictment; is that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And there is a Plea Agreement forming the basis for the plea; right?

THE DEFENDANT: That is correct.

THE COURT: Mr. Machamer, as I indicated, this is a change of plea hearing. The purpose of this hearing is for me to determine whether you understand the many rights that you are surrendering if I accept your change of plea from not guilty to guilty.

Before I can accept your plea, I must make a number of determinations, such as whether you consent to my taking your plea, whether you are competent to plead at this time, whether you understand your trial rights that will be waived if I recommend that your guilty plea be entered, whether you fully understand the nature of the charges against you, as well as the maximum potential penalties and any mandatory minimum penalties, whether you fully understand the terms of the Plea Agreement, and whether your plea is voluntary.

Mr. Machamer, you should feel free to ask me questions at any time during today's proceedings, especially if you

don't understand something.  You are also welcome to consult with Mr. Malarcik at any time during today's proceedings.

Even though you have expressed a present intention to plead guilty, you have the right to change your mind at any time before I accept your changed plea at the end of this proceeding.

Mr. Doroodian, is this a matter to which the Crime Victims' Rights Act applies?

MR. DOROODIAN:  No, Your Honor.

THE COURT:  Mr. Machamer, in a moment, I will place you under oath and ask you some questions.

Please state your full name for the record.

THE DEFENDANT:  Christopher John Machamer.

THE COURT:  And how old are you?

THE DEFENDANT:  28.

THE COURT:  And where do you live?

THE DEFENDANT:  North Canton, Ohio.

THE COURT:  Are you married?

THE DEFENDANT:  I am not.

THE COURT:  And do you have any children?

THE DEFENDANT:  No.

THE COURT:  How far did you go in school?

THE DEFENDANT:  Two years in college.

THE COURT:  Okay.  My understanding, then, is you are able to read, write, speak, and understand the

English language without assistance; is that right?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  What kind of work have you done over the last few years?

THE DEFENDANT:  Mostly construction, demolition, flipping houses, so anything construction.

THE COURT:  All right.  How is your health?

THE DEFENDANT:  Very well.

THE COURT:  Good.

In the last 24 to 48 hours, have you taken any medication, drugs, or alcohol that would affect your ability to understand what's going on today?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Have you ever been under the care of a doctor or a hospital for any mental condition?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Is your mind clear, and do you know why you are here today?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand the purpose of this proceeding?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Are you currently on probation, parole, or supervised release for any federal, state, or other conviction?

THE DEFENDANT: Supervised release.

THE COURT: And do you understand that pleading guilty here today may adversely affect your probation, parole, or supervised release status?

THE DEFENDANT: I'm sorry. Could you repeat that?

MR. MALARCIK: He's just on supervised release for this case.

THE COURT: Oh.

THE DEFENDANT: Yes.

THE COURT: Okay. So I was thinking supervised release, meaning post-trial conviction. So you're just on bond; right?

THE DEFENDANT: Correct, yes.

THE COURT: Okay. Mr. Malarcik, do you have any concerns as to Mr. Machamer's competency to proceed today?

MR. MALARCIK: No, Your Honor. None.

THE COURT: Have you had any difficulty communicating with him?

MR. MALARCIK: No, Your Honor.

THE COURT: Have you discussed the case with him fully?

MR. MALARCIK: We have.

THE COURT: And do you believe that Mr.

Machamer understands the nature and purpose of today's proceedings?

MR. MALARCIK: I do.

THE COURT: Mr. Doroodian, does the United States have any concerns as to Mr. Machamer's competency to proceed today?

MR. DOROODIAN: No, Your Honor.

THE COURT: And, Mr. Machamer, I will say, although you will be waiving certain rights today, one right that you will not be waiving is your right to counsel. You will not be asked to waive your right to counsel. And as I said before, you may consult with Mr. Malarcik at any time during this plea hearing.

Mr. Machamer, I have some questions for you regarding your attorney. Have you had enough time and opportunity to talk to Mr. Malarcik about the allegations in this case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you told Mr. Malarcik everything you know about the case, including the charges, any and all defenses to the charges, and any and all personal and financial circumstances in possible mitigation of the charges?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you satisfied with the advice, competence, and efforts of Mr. Malarcik?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  I'd like to direct your attention to paragraph 28 of the Plea Agreement.  It states: Defendant makes the following truthful statements:  I have discussed this case and this plea agreement in detail with my attorney who has advised me of my Constitutional and other trial and appeal rights, the nature of the charges, the elements of the offenses the United States would have to prove at trial, the evidence the United States would present at such trial, possible defenses, the advisory Sentencing Guidelines and other aspects of sentencing, potential losses of civil rights and privileges, and other potential consequences of pleading guilty in this case.  I have had sufficient time and opportunity to discuss all aspects of the case in detail with my attorney and have told my attorney everything I know about the charges, any defenses I may have to the charges, and all personal and financial circumstances in possible mitigation of sentence.  I am satisfied with the legal services and advice provided to me by my attorney.

Mr. Malarcik, is the statement that I just read to you from the Plea Agreement true and accurate?  Or sorry.  Yes, Mr. Machamer.

MR. MALARCIK:  It's okay.

THE DEFENDANT:  Yes.

THE COURT: Is it true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Malarcik, I would hope that you would think it was true as well.

MR. MALARCIK: If not, I shouldn't be here; right?

THE COURT: Mr. Doroodian -- oh, and I should ask you, Mr. Malarcik, have you had enough time to consult with and prepare Mr. Machamer at each stage of the proceeding?

MR. MALARCIK: Yes, Your Honor.

THE COURT: Mr. Doroodian, please summarize the charges against Mr. Machamer, including the maximum penalty, and any mandatory minimum penalty, the special assessment, supervised release term, and any restitution provisions for forfeiture requirements, and any potential immigration consequences, if any.

MR. DOROODIAN: Yes, Your Honor.

Mr. Machamer is pleading to five counts -- that is, the five counts that are listed in the Indictment. The first count is engaging in a business of manufacturing and dealing firearms without a license. That's in violation of Title 26, United States Code, Sections 5861(a) and 5871.

And Count 2 is making of firearms in violation of the National Firearms Act. That's in violation of Title 26,

United States Code, Sections 5822, 5861(f), and 5871.

Count 3 is unlawful transfer of unregistered firearms, and that's in violation of Title 26, United States Code, Sections 5812, 5861(e), and 5871.

THE COURT:  I have that as Count 2 of the Indictment, and then Count 3 as Title 6, United States Code, 5822.

MR. DOROODIAN:  It appears that that is true.

THE COURT:  Okay.  I was --

MR. DOROODIAN:  The version --

THE COURT:  If you look at page 2 of the Plea Agreement, that's what I'm looking at.

MR. DOROODIAN:  I am looking at the Plea Agreement.

THE COURT:  Okay.

MR. DOROODIAN:  Apparently, my Plea Agreement is different.

THE COURT:  Okay.

MR. DOROODIAN:  However, I do have another copy of the Plea Agreement, so I'm going to read off of this copy instead of that copy.

THE COURT:  Okay.

MR. DOROODIAN:  So I will restate.  What I had just noted was Count 3.

THE COURT:  Uh-huh.

MR. DOROODIAN:  Count 2 is transfer of an unregistered firearm, and that's in violation of Title 26, United States Code, Sections 5812, 5861(e), and 5871.

I've already stated Count 3.

Count 4 is possession of an unregistered firearm. That's in violation of Title 26, United States Code, Sections 5841, 5861(d), and 5871.

And then, finally, Count 5 alleges unlawful possession of a firearm with an obliterated serial number, and that is in violation of Title 26, United States Code, Sections 5842, 5861(h), and 5871.

All of these five counts carry the same penalties statutorily:  That is, a maximum term of 10 years in prison, a maximum fine of $10,000, a maximum period of supervised release, which is three years, and a $100 special assessment on each, for a total of $500 special assessment.  And I believe Mr. Machamer is a U.S. citizen, so there should not be any immigration consequences with relation to this.

THE COURT:  That's my understanding.  I just wanted to make sure we have it on the record.

There's also a forfeiture as well; correct?

MR. DOROODIAN:  That is correct, Your Honor. And that is stated in detail in paragraph 4.  And I believe the parties have ensured that all of the statutory citations are correct, specifically with respect to the forfeiture and

destruction, pursuant to Title 26, United States Code, Section 5872, and Title 28, United States Code, Section 2461(c).  And it identifies the items that Mr. Machamer has agreed would be forfeited and destroyed by the United States.  And there are -- and if the Court wants me to, I can identify all of them here.

THE COURT:  Sure.

MR. DOROODIAN:  The first one is a fully assembled AR-15-style rifle with a barrel measuring less than 9 1/4 inches, and an obliterated serial number; there is also another AR-15-style lower receiver, with an obliterated serial number; there is also ten fully assembled AR-15-style rifles with barrels measuring approximately 9 1/4 inches, bearing no serial numbers; there is also nine AR-15-style lower receivers, bearing no serial numbers; and then there's also twenty-five serialized AR-15 lower -- sorry -- AR-15-style lower receivers.  That's for the forfeiture to the United States as to the destruction.

There is also a drill press, a -- that is, two Ghost Gunner brand CNC mills; five AR-15-style rifles; two short-barrel shotguns registered to Mr. Machamer; six handguns; eight firearm suppressors registered to Mr. Machamer; and one AK-47-style lower receiver.

THE COURT:  Thank you, Mr. Doroodian.

Mr. Malarcik, have the charges and potential penalties

13

been accurately summarized by Mr. Doroodian?

MR. MALARCIK:  Yes, Your Honor.

THE COURT:  And Mr. Machamer, do you understand the nature of the charges?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you also understand the statutory penalties for the offense?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that if you enter a plea with respect to these charges, that you will be admitting your guilt and waiving any right to claim innocence in this case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  I now want to review your constitutional rights with you on the record so that I'm satisfied you understand them.  I'm sure you've already done so with Mr. Malarcik, but it's important that we cover it in court today.

You have a right to trial.  Under the United States -- Constitution of the United States, you have a right to trial either to a Court or to a jury.  At a trial, you would be presumed innocent.  You would not have to prove that you were innocent.  Rather, the burden of proof in a criminal case remains on the Government until the very end.  The Government would be required to prove your guilt beyond a

reasonable doubt.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  At trial, you would have a right to confront and cross-examine the witnesses the Government might bring to testify against you.  You would also have a process to compel witnesses to testify on your behalf.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you had a trial, you could not be forced to testify, but you would have the right to testify if you chose to do so.  If you chose not to testify, no inference or suggestion of guilt could be made or drawn from the fact that you did not testify.

Do you understand this important constitutional right as a Defendant?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  As I stated earlier today, if you proceed today with your decision to plead guilty, you will give up your right to self-incrimination.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If your trial was before a jury, a large number of prospective jurors whose names are chosen at random would be summoned to this courthouse and would

ultimately be composed of 12 people after you and your lawyer had an opportunity to participate in the jury selection process. In addition, the jury would have to agree unanimously on its verdict and would have to consider each count separately.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you have a right to plead not guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that you do not have to plead guilty even if you are guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if you plead not guilty, you have the right to a speedy trial, at which you have a right to be represented by a lawyer, and if you cannot afford a lawyer, the Court will appoint a lawyer to represent you without cost?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if at trial you were found guilty, you would also then have a right to appeal your conviction and your sentence under certain circumstances?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that if you

plead guilty, you are waiving all of these rights, and if your plea is accepted, there will be no trial?

(Discussion held off the record between Mr. Malarcik and the Defendant.)

THE DEFENDANT: Yes, Your Honor.

THE COURT: So instead, do you understand that the process will be that I will enter a recommendation that a finding of guilty be entered, and then Judge Ruiz will consider that recommendation and, assuming he concurs, enter the finding of guilty upon the record and then sentence you on the basis of your plea after considering a presentence investigation?

Do you understand that process?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that by pleading guilty, you will be deprived of valuable civil rights either for a period of time or permanently, such as the right to vote, the right to hold public office, and the right to serve on a jury?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that by pleading guilty to a felony in federal court, you will never again legally possess a firearm for the rest of your life?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Machamer, have you discussed

with your attorney the charges in Counts 1 to 5 to which you intend to plead guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand the charges made against you in Counts 1 through 5?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Doroodian, please state the essential elements of each offense that would have to be proven if this matter went to trial.

MR. DOROODIAN:  Your Honor, as to the first count, engaging in a business of manufacturing and dealing firearms without a license, there with two elements:  First, that the Defendant knowingly engaged in a business as a manufacturer or a dealer in the National Firearms Act firearms; and, two, Defendant did not pay the special occupational tax required by Title 26, United States Code, Section 5801, for such business, or did not register as required by a Title 26, United States Code, Section 5802.

As to the second count, transfer of an unregistered firearm, there are two elements:  First, that the Defendant knowingly transferred a firearm, as defined under Title 26, United States Code, Section 5845(a); and the second element is that the transfer of such firearm was in violation of the National Firearms Act, Title 26, United States Code, Chapter 53.

As to Count 3, making of firearms in violation of the National Firearms Act, there are two elements:  First, that the Defendant knowingly made a firearm, as defined under Title 26, United States Code, Section 5845(a); and, two, the making of such firearm was in violation of the National Firearms Act, Title 26, United States Code, Chapter 53.

As to Count 4, possession of an unregistered firearm, there are four elements:  Fist, that the Defendant knowingly possessed a firearm, as defined under Title 26, United States Code, Section 5845(a); two, that the Defendant knew the firearm was a firearm, as defined under Title 26, United States Code, Section 5845(a); three, that the firearm was in operating condition; and, four, that the firearm was not registered to the Defendant in the National Firearms Registration and Transfer Record.

And, finally, the fifth count, which is possession of a firearm with an obliterated serial number, there are three elements:  First, that the Defendant knowingly possessed a firearm, as defined under Title 26, United States Code, Section 5845(a); two, that the firearm's serial number had been obliterated; and, three, that the Defendant knew that the firearm's serial number had been obliterated.

THE COURT:  Mr. Malarcik, do you concur that the essential elements of each of the five offenses have been accurately stated by Mr. Doroodian?

MR. MALARCIK:  Yes, Your Honor.

THE COURT:  And Mr. Machamer, do you understand the essential elements of each of the five offenses?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Earlier in this proceeding, the Government outlined the maximum penalty, including not only the sentence, but any mandatory minimum, the special assessment, supervised release terms, and any restitution provisions or forfeiture requirements.  You stated earlier in this proceeding that you understood those penalties; is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And Mr. Machamer, do you understand that following any prison term you will be subject to a period of supervised release and that violation of the conditions of supervised release can result in revocation of that release and additional jail time without any credit for supervised release time already served prior to the violation?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand that restitution may be ordered as a condition of your probation?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Also, depending on your financial

status, do you understand that the Court can order you to pay cost of prosecution, confinement, and/or supervised release?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you also understand that as a result of your guilty plea, a special assessment of $100 per count must be imposed by the Court, so that will be a $500 assessment?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you also understand that as a result of your plea, you will be required to forfeit property to the Government, and Mr. Doroodian already put that property on the record?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  As I noted earlier, there has been a Plea Agreement reached between Mr. Machamer and the Government.  Do all the parties have a copy of the Plea Agreement in front of them?

MR. MALARCIK:  Yes, Your Honor.

MR. DOROODIAN:  Yes, Your Honor.

THE COURT:  Mr. Machamer, is that your signature on page 16 of the Plea Agreement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And did you initial each and every page of the Plea Agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And did you have an opportunity to read every part of the Plea Agreement and to discuss its meaning with Mr. Malarcik before you signed and initialed it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand the terms of the Plea Agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Doroodian, please summarize the key terms of the Plea Agreement with Mr. Machamer.

MR. DOROODIAN: Your Honor, the Plea Agreement, as the Court stated, is 16 pages.

The first page identifies the waiver of constitutional trial rights, which the Court has already gone over with Mr. Machamer.

The second page identifies the statutory penalties, which has already been discussed in open court.

The third page identifies the special assessment, the forfeiture, and the destruction of property, which has already been discussed in court.

The fourth page identifies the potential that the Court may order costs of prosecution and sentence, including, but not limited to, imprisonment, community confinement, home detention, probation, and supervised

release.

It also discusses that the Court may order restitution, although the parties do not believe that's at issue in this case.

It also states that a violation of probation or supervised release, which follows a term of custody, could, in some circumstances, result in a period of incarceration or additional penalty imposed by the Court, that is, the violation of that supervised release. And it also identifies that in some circumstances the repeated violations of supervised release could result in repeated terms of imprisonment which could, in addition to the initial sentence, exceed the maximum statutory term for any of the counts, which is 10 years.

It also identifies that -- the immigration consequences, but as the Government stated, there is little risk of that with this Defendant.

And it also states that the Defendant is pleading guilty to all of the counts in this case.

THE COURT: The one thing that I would say, and just a typo, and maybe you can fix it, with paragraph 10, Defendant agrees to plead guilty to the Information in this case.

There is an Indictment; right?

MR. DOROODIAN: It's an Indictment. It's not

an Information.

THE COURT:  Right.  So maybe just cross that off.

MR. DOROODIAN:  If that's okay, I would love to make that change --

THE COURT:  Yeah, sure.

MR. DOROODIAN:  -- if we have the original.

THE COURT:  And just both parties can sign it at the conclusion of the hearing.

But Mr. Malarcik, do you have any objection to that?

MR. MALARCIK:  No, Your Honor.

THE COURT:  All right.  And Mr. Machamer, are you okay with that?  You know that you've been indicted?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Continue, Mr. Doroodian.

MR. DOROODIAN:  The following page, that is, page 5, identifies the elements of the offense which have already been discussed in open court.

Page 6 is a review of the sentencing guidelines and agreements.  It identifies that the Court, that is, Judge Ruiz, will review the sentencing guidelines that are applicable at the time of sentencing, and in consideration of the statutory factors under Title 18, United States Code, Section 3553(a), will make a determination as to the appropriate sentence in this case.  That will occur after

the generation of a presentence report. And paragraph 13 identifies for the Defendant what that presentence report is and how that will be used in determining a sentence.

And later on in the page, in paragraph 14, it states that there is no agreement between the parties as to this sentence, or the sentencing range that should be applicable in this case, and it allows for all parties to recommend whatever sentence they believe is appropriate. And it states that that recommendation is not binding on the Court, and this is by virtue of the fact of this being an 11(c)(1)(B) agreement under the Federal Rules of Criminal Procedure.

Going forward, on page 7, it states that the parties both reserve the right for allocution, that is, the opportunity to speak as to the appropriate sentence for the Defendant at his sentencing hearing.

Paragraph 17 summarizes the stipulated guidelines computation that is applicable. And the parties have agreed to a computation that is outlined in that chart on page 7, which identifies a base offense level of 18, a plus 6 for the number of firearms, a plus 4 for obliterated serial numbers on firearms, a plus five for the transfer of two or more firearms, knowing or having reason to believe that such a transfer would result in receipt of firearms by an individual who intended to use or dispose of the firearms

unlawfully, and that total is 33 before acceptance of responsibility.

And at the bottom of the page, it states that, at this point, the United States Attorney's Office and the Defendant believe that he is eligible for three levels for acceptance of responsibility pursuant to Sentencing Guidelines Commission Sections 3E1.1(a) and (b), and that continues on to page 8.

In addition, on page 8, it reviews the fact that the criminal history category will be determined at the time of sentencing, and the parties do not have an agreement as to what Mr. Machamer's criminal history category is at this time.

It also states, importantly, that the Defendant acknowledges that he is waiving, by virtue of this Plea Agreement, waiving most of his appellate rights; however, he is reserving it with respect to three sections:  First, he's reserving the right to appeal any punishment in excess of the statutory maximum; second, he is reserving the right to appeal any sentence that exceeds the maximum of the sentencing imprisonment range determined under the advisory sentencing guidelines in accordance with the sentencing stipulations and computations in this agreement, using the criminal history category found by the Court.  And I believe, although this version -- is there another section

as well?

MR. MALARCIK:  Yeah.

MR. DOROODIAN:  Okay.  Okay.  All right.

And although of the multiple versions of the Plea Agreement that I have in front of me, they do not have this, which I believe is agreed to by the parties, and that is that Mr. Machamer is reserving the right to appeal the Court's June 17th, 2025, order denying his motion to dismiss, and that is Docket Number 36 on the docket.

Moving on, we have the waiver of statute of limitations, which goes into page 9.  And it states that Mr. Machamer understands that he's waiving a right to challenge, based on a statute of limitations, any prosecution that is not already time-barred under three specific circumstances: First, that if the Defendant fails to plead guilty at the plea proceeding, or the Court refuses to accept the guilty plea by Defendant pursuant to this agreement; second, that the Court permits Defendant to withdraw a guilty plea pursuant to this agreement or otherwise, or vacates such guilty plea; and, third, that a conviction obtained pursuant to this agreement is vacated, overturned, or otherwise set aside.  And that continues on to the factual basis, which is -- starts --

THE COURT:  And we will get to that in a little bit, so you can skip that for now.

MR. DOROODIAN:  That does persist for multiple pages.  It starts in paragraph 22 and goes on, I believe, just to be consistent here, all the way to page 13.

And, finally, page 13, 14, and 15 identifies other provisions.  For example, if the U.S. Attorney's Office requests a financial statement, the Defendant will submit a Financial Statement of Debtor Form to the U.S. Attorney's Office.  And also, it reiterates that the parties are free to advise the Court about matters not expressly addressed within the terms of this Plea Agreement; that is, if it's silent, then they can speak to it.  If it's in the Plea Agreement, then they are bound by it.

It also identifies the consequences of breaching the Plea Agreement in paragraph 26.

Paragraph 27 states that the agreement here is not binding on other jurisdictions or agencies.  It's only an agreement between the Defendant and the U.S. Attorney's Office for the Northern District of Ohio.

Paragraph 28 identifies that the Defendant is satisfied with the assistance of counsel, which he's already stated.

Paragraph 29, which is the last paragraph, states that this agreement is complete and voluntarily entered by the Defendant in this case.

And then the final page is the signature page.

THE COURT: Thank you, Mr. Doroodian.

Mr. Malarcik, do you agree that Mr. Doroodian has accurately summarized the key terms of the Plea Agreement?

MR. MALARCIK: Yes, Your Honor.

THE COURT: And, Mr. Machamer, after hearing the summary of the key terms of the Plea Agreement, do you understand all of them?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And has anyone, including your attorney, the attorney for the United States, or any representative of the Court made any promise to you other than what is in the Plea Agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: I would like to direct your attention to paragraph 15 of the Plea Agreement. That appears on page 6. And it states in relevant part:

Defendant further understands that once the Court has accepted the Defendant's guilty plea, the Defendant will not have the right to withdraw such a plea if the Court does not accept any sentencing recommendations made on the Defendant's behalf, or if Defendant is otherwise dissatisfied with the sentence.

Do you understand that if I recommend the acceptance of this agreement and that Judge Ruiz accepts that recommendation that you cannot withdraw your guilty plea?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And let me direct your attention to paragraph 20. Mr. Doroodian already went over it, but it is an important provision, so I would like to put it on the record today.

This is the waiver of appeal and post-conviction attack. It states: Defendant acknowledges having been advised by counsel of Defendant's rights, in limited circumstances, to appeal the conviction of sentence in this case, including the appeal right conferred by Title 18, United States Code, Section 3742, and to challenge the conviction or sentence collaterally through a post-conviction proceeding, including a proceeding under Title 28, United States Code, Section 2255. Defendant expressly and voluntarily waives those rights, except as specifically reserved below, and these three rights are: First, you reserve the right to appeal any punishment in excess of the statutory maximum; (b), any sentence to the extent it exceeds the maximum of the sentencing imprisonment range determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations in this agreement, using the criminal history category found applicable by the Court; and, (c), you are also reserving the right to appeal the June 17th, 2025, order denying the motion to dismiss, and that is ECF Number 36. To wit:

Paragraph 20 continues that nothing in this paragraph shall act as a bar to Defendant perfecting any legal remedies Defendant may otherwise have on appeal or collateral attack with respect to claims of ineffective assistance of counsel or prosecutorial misconduct.

Do you understand, then, that if I accept the -- if I recommend the acceptance of the Plea Agreement and Judge Ruiz accepts that recommendation, then you cannot appeal your sentence, except under the three very limited circumstances permitted by paragraph 20?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you also understand that if I recommend the acceptance of the Plea Agreement and Judge Ruiz concurs, that you cannot contest your sentence by any post-conviction proceedings, except under the limited circumstances permitted by paragraph 20?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you further understand that if I recommend the acceptance of this agreement and Judge Ruiz concurs, that under some circumstances the Government may have the right to appeal any sentence imposed?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I'm assuming that you've talked with Mr. Malarcik in detail about the sentencing guidelines; is that right?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  The parties have included a preliminary calculation of the offense level.  That is page 7, paragraph 17.  Mr. Doroodian already put that forth on the record, but the gist of it is that the subtotal prior to the acceptance of responsibility is 33 and that, at this time, the Government is recommending a three-level reduction for acceptance of responsibility, which would bring that down to a 30.

Mr. Malarcik, do you agree with that calculation?

MR. MALARCIK:  Yes, Your Honor.

THE COURT:  And Mr. Machamer, do you agree with the calculation as well?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And I further note that the parties already put on the record that both parties have the right to recommend any sentence.  So you are not bound by that guideline.  It is just what the District Court is going to be looking at.

Mr. Machamer, do you understand that under federal sentencing law, Judge Ruiz can sentence you to a longer or shorter period of imprisonment?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you also understand that if the sentence is more severe than you expected, you are still

bound by your plea, and you won't have the right to withdraw it as previously discussed in this hearing?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Machamer, the Court won't be able to determine with finality the applicable guideline range for your case until after a presentence report has been completed, and you, Mr. Malarcik, and the Government have had an opportunity to review the report and comment to both the probation officer and the Court.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And under the current state of the law, the Court must treat the sentencing guidelines as advisory, meaning they are not binding, but they are a factor that the Court must consider.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And in deciding your sentence, the Court will consider the sentencing guidelines, as well as the provisions of Title 18, United States Code, Section 3553(a), which identifies other factors the Judge must consider before imposing a sentence.  These factors include, but are not limited to, the nature and circumstances of the crime and the history and characteristics of you, the Defendant; a need for the

sentence to reflect the seriousness of the offense, to promote respect for the law and provide just punishment; to afford deterrence to criminal conduct; to protect the public from further crimes; and to provide you with needed educational or vocational training, medical care, drug, or other correctional treatment.

Do you understand these factors?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  We are -- now have gotten to the factual basis of the plea.

Mr. Doroodian, please summarize what the evidence would be in this case if the case went to trial.

Now, Mr. Machamer, please listen very carefully.

MR. DOROODIAN:  Your Honor, I will incorporate and adopt paragraphs 22 and subsection (a) through (i) in that summary.  I will not read it verbatim, but I hereby adopt that in my summary, if this case were to proceed to trial.

And I will summarize briefly that the evidence would show that between the dates of September 11th, 2023, and January 4th, 2024, Mr. Machamer engaged in several criminal acts.  Mr. Machamer -- within the Northern District of Ohio, Eastern Division, specifically in the City of Canton, Ohio. Mr. Machamer previously held several federal firearms licenses and was very familiar with the requirement to hold

34

such licenses.  He did not hold any licenses at the time of the offenses.  However, he did engage unlawfully in the business of manufacturing and dealing firearms without a license, without paying the appropriate tax, and without registering as such, and he further possessed, knowingly, multiple firearms that were not registered or had obliterated serial numbers.

Specifically, Mr. Machamer was engaging unlawfully in the business of purchasing large quantities of AR-15 lower and upper receivers for the purposes of assembling them, shortening the rifle -- the barrel of the rifle down from beyond 16 inches, which is what the law requires, to under 16 inches, closer to that 9-inch length, and also removing the serial numbers from the barrel of those rifles, or the upper receiver, where those serial numbers would normally be located.  And subsequently, what Mr. Machamer did is that he, once assembled and manufactured the firearms, which were illegal, he subsequently sold those firearms to other individuals for profit.  And he -- I -- specifically sold at least 12, I believe, to an individual that was identified in the investigation.  And he also had on hand numerous firearms that he manufactured on hand.

And all of those items that were seized on January 4th, 2024, were listed in the forfeiture provision in paragraph 4.  Mr. Machamer knowingly possessed all of

those firearms, and the tools to manufacture firearms, and he knew that they were not registered, and they were not lawfully able to be possessed because they were obliterated and serial numbers as well.

And I believe that covers everything, in short summary, that is contained within those four pages of the Plea Agreement, but I do adopt the full summary as well.

THE COURT:  All right.  Mr. Malarcik, is the statement regarding the factual basis and relevant conduct that Mr. Doroodian just put on the record, is it correct?

MR. MALARCIK:  Yes, Your Honor.

THE COURT:  And do you wish to add anything, or make any corrections?

MR. MALARCIK:  No, Your Honor.

THE COURT:  And I will ask the same question to you, Mr. Machamer.  Was the factual basis and relevant conduct statement that Mr. Doroodian made correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you disagree with or wish to add anything to the statement?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Mr. Doroodian and Mr. Malarcik, is there any right, or are there any procedural provisions that I have failed to account for prior to receiving the plea?

MR. DOROODIAN:  No, Your Honor.

MR. MALARCIK:  No, Your Honor.

THE COURT:  Mr. Machamer, I am prepared to receive your plea.  Do you want to confer with Mr. Malarcik before I ask what your plea is?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Do you have any questions of me before I ask what your plea is?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Mr. Machamer, having heard all of the discussion on the record today, and understanding the rights that you will be waiving, do you now wish to withdraw your former plea of not guilty and enter a new plea?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  What is your plea to Counts 1 through 5 of the Indictment?

THE DEFENDANT:  Guilty.

THE COURT:  Is your plea entirely voluntary, without threats or promises for you to enter this plea, other than the promises set forth in the Plea Agreement that we just discussed?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Has anyone threatened you or threatened anyone else or forced you in any way to plead guilty?

THE DEFENDANT:  No, Your Honor.

THE COURT: Is the plea -- is your plea of your own free will because you are, in fact, guilty of the charged offenses set forth in Counts 1 through 5?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Machamer, because you acknowledge that you are, in fact, guilty, as charged, in Counts 1 through 5 of the Indictment, that there is an adequate factual basis for your plea, that you've had the assistance of a very able lawyer, that you know your right to a trial which is being waived if your plea is accepted, that you know and understand the maximum possible punishment and what the sentencing guidelines preliminarily provide, that on the basis of the answers given by you under oath and on the record in the presence of Mr. Malarcik, as well as the remarks of counsel for both sides, I hereby make or renew the following findings:

I find that you are competent to make this plea, that you were advised of your constitutional rights, that you made a knowing, intelligent, and voluntary waiver of those rights, and that the plea was made knowingly, voluntarily, with a full understanding of the charges and the maximum penalties involved and the effect of the plea.

Accordingly, I will enter a finding and recommendation of a plea of guilty, which will be submitted to Judge Ruiz.

If Judge Ruiz accepts and adopts my finding and

recommendation, a judgment of guilty shall be entered.

To expedite the completion of this case, the matter will be immediately referred to the United States Probation Office for the preparation of a presentence report.

Sentencing will take place at a date and time to be set by Judge Ruiz.

The parties are instructed to carefully review the presentence investigative report, to file any objections to that report, and to file any additional presentence memorandum in advance of the sentencing hearing.

Mr. Machamer, you are expected to cooperate fully and completely with the probation officer in preparing the presentence report.

Failure to do so will be called to the attention of Judge Ruiz prior to sentencing and will presumably be taken into consideration in determining the appropriate sentence, whether to grant credit for acceptance of responsibility, and the appropriate sentence.

Your bond is continued on the same conditions that we've had before.

Mr. Doroodian, is there anything further on behalf of the United States?

MR. DOROODIAN:  No, Your Honor.

THE COURT:  And, Mr. Malarcik, anything further on behalf of Mr. Machamer?

MR. MALARCIK:  No, Your Honor.

Thank you.

THE COURT:  And Mr. Machamer, did you understand everything that just occurred?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Thank you, all.

We are adjourned.

COURTROOM DEPUTY:  All rise.

THE COURT:  Please be seated.

(Proceeding concluded at 2:22 p.m.)

- - -

**C E R T I F I C A T E**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. This transcript was prepared to the best of my ability from a digital audio recording of the proceedings provided by the Court.

*/s/ Stacey L. Kiprotich* _____ *10/1/2025*
STACEY L. KIPROTICH, RMR, CRR            DATE